1, 2, 8, 0, Daiichi v. Lee 1, 2, 8, 0, Daiichi v. Lee Mr. Josepher, don't sit down. Let's get going. Although, she can give you water, if you want. Understood. Thank you and good morning, Your Honors. Congress guaranteed a patent term adjustment to offset the PTO's own delays. After this court reversed the agency's systematic failure to effectuate that guarantee, the agency expressly recognized that this presented an extraordinary circumstance. But how does the bottom line in your case come down to the rule of finality? Well, the reason is twofold, I suppose. First, remember, the agency unquestionably has administrative authority. But then we evaluate that under a rational basis. They chose not to exercise the discretion to go beyond 180 days, so that doesn't help you as much. So why isn't the rule of finality just definitive? You could have been like Wyeth. You could have challenged it. You didn't. The rule of finality attaches. That's the end of the case. It attaches under this court's precedence to an action for judicial review of the initial patent term adjustment, as in Wyeth. If there had been an earlier motion by Daiichi, it would have had a much easier path. They could have filed a direct appeal as of right, as Wyeth did, gotten into NOVA standard of review, and this would have been an easy case. Instead, I agree that we are now relegated to the more difficult path, which is asking the agency to exercise its extraordinary circumstances authority, as is done for some others, in recognition of this being a different type of situation. And when they declined, they chose to have an interim procedure, waive a fee, and allow people to come in within 180 days. And the reason they did that, which seems to me clear from the Federal Register with the interim guidelines and their arguments, was because there was 180 days by which those exact same individuals would have been permitted to go to the district court, and they'd have gotten probably flipped if they really were Wyeth-like mistakes. And so the agency said, rather than have you drag us or this into a civil litigation, come back here. We'll be a coextensive time period, 180 days. Why is that unreasonable? Isn't that the burden? Arbitrary and capricious, irrational, unreasonable, however you want to frame it. Why is it unreasonable for them to choose to exercise their discretion to link the period that they're extending, two months to 180 days, to the same identical period that you would have had to bring a civil action? Well, first, that's not what the responsible agency decision-makers below either said or did. And so under Chenery principles, at a minimum, there has to be a remand for the agency. Why? I read the Federal Register. I read it. I mean, you're right. They didn't expressly say, but they did say, they actually said, there's a 180-day period in 154 for civil action. And then they didn't say, hence, we're going to extend our period to 180 days. But it's really the next two paragraphs in which they do extend it to 180 days. So you're right. It wasn't expressed. You're absolutely right. It wasn't expressed. But isn't it the most logical inference, quite frankly, from the way that they laid out their actual notice in the Federal Register? Well, no, because the other thing to look to is the final agency actions on review here, that are actually on review here, the decisions in which the agency denied relief on the two Daiichi patents. And what it said very clearly – it's not a lack of clarity here – what it said clearly in each of those final agency actions is that it thought that 180 days marked the, quote, outer limit of its legal authority. I agree. And that's wrong. And I'm with you. Except that's not the only action. In each of the two patents, there's an initial rejection. Then you have two more, because you thought reconsideration was a dismissal of the petition, and then reconsideration again. And in each of the two patents, the initial decision that denied the extension, which is what is truly on appeal to us, right? It's not just a reconsideration motion that's on appeal to us. It's the initial decision. They all represent the agency's definition of why it did what it did. Both of those cite finality. One of them expressly cites why if, and says you had a shot. You could have brought it in 180 days, the rule of finality. I mean, it's clear. Well, the very important thing here, though, is you're right that the initial agency actions, which are not on review, are typically on review. Well, actually, those are on review, because the others are simply reconsiderations of the initial. But that is on review. Well, but what happened between the initial agency actions, right, and the final one was the interim procedure, where you're right, initially what the agency said is there's no extraordinary circumstance. You could have sought sooner. You didn't. Okay? Well, after the interim procedure, they couldn't say that anymore, because in the interim procedure they granted relief to people who had not, according to the interim procedure, preserved a right to judicial review. No, no, no. Those people still had a right to judicial review if they were within the 180 days. They didn't have a right to administrative review under the two-month period, but they did very much, if they're within the 180 days, still have a right to judicial review. That's not what the interim procedure says. The interim procedure says, and this was consistent with past agency practice, it says this is a, quote, optional procedure. If someone wants to preserve a right to judicial review, they still have to comply with the requirements of the motion-free consideration regulation, quote, in a timely manner. You go to look at what are the requirements in the statute and the regulation they cited. One of them is the 60-day rule for filing an administrative motion. So they were saying, they were citing that as a requirement for judicial review, saying it had to be done, quote, in a timely manner. The only reasonable reading, then, of the interim procedure is they were saying this is an easy administrable, this is an easy procedure for anyone to come in within 180 days. If you want a right to judicial review, you have to have, still have to have filed a motion-free consideration here or a request for consideration here within 60 days of the issuance of the patent. Now, because they were going back 180 days, that means that they were giving relief for four months of patents, those that had issued more than two months earlier but less than 180 days earlier, regardless of whether, at a point when the time to seek judicial review, to preserve the right to judicial review, had already passed. And so if we look both at what- No, no, no, the right to seek judicial review had not passed. Oh, because you're saying there had been no petition first filed for those. Yes. I follow you now. Give me a minute, but I'm with you. So the point is, to go to judicial review as a matter of exhaustion of the administrative remedies, there had to be a timely, within 60 days, petition for review. And they expressly said that- You're saying they couldn't even have taken advantage of the 180 days to go to the district court if they hadn't in the first 60 days filed for the petition initially and had it been denied by the PTA. According to the interim procedure itself. So what they actually did in the interim procedure- But isn't that, that's not consistent with 154, is it? Is that what you just said? I thought under 154 they could go directly to a district court within 180 days. Well, 154 sets 180 days as the time limit for seeking judicial review. Right, right. But it doesn't say anything about a, you have to first, there's no administrative exhaustion attached to the 154, 180-day district court provision. Is there? Yeah, 154 itself- There is, or was that a filler? It's a background rule. 154 itself does not address the administrative exhaustion requirement. But administrative exhaustion is a general background rule of administrative law. And in particular, the PTO itself, and this is cited in our brief, the PTO itself in another patent term determination in 2003 had said that as a fundamental basic principle of administrative law, one had to exhaust administrative remedies by filing a timely reconsideration petition within 60 days. So the point is this. We don't have to tease out a rationale from an unclear statement. The final agency actions here specifically said the agency just didn't have authority. It was going to the outer limits of its authority, and that was it. Their current post hoc rationale that well know, we actually did know that we had, we actually were drawing a discretionary line instead, is incompatible with what they actually did. Now, in the PTO's brief, they say that since that time, since that time there have been a number of these cases that went up to district courts and were remanded for the PTO to act, and they say that on remand they did in fact take action regardless of whether there had been an exhaustion of administrative remedies by filing within 60 days. But if there are any subsequent changes in practice or if it's just sort of a reality, you get a case back from district court, you act on it, whatever that may be, it doesn't impact on the fact that the agency's decision has to be judged by what they said and what they did. And what they said and did was they said they were going to the outermost limits of their legal authority, and in doing so they were sweeping in people who they said could not at that point in time, at that point in time, the time for seeking judicial review would have already expired. Now, one reason that's very important is that it's a very basic principle of administrative law that when Congress delegates authority to an agency, discretion to an agency, it has to actually exercise the authority. And you can't have a situation where the agency's responsible decision makers on the record say, we just don't have, sorry, we don't have authority to do this round of the next, and thereby duck responsibility and accountability. And then let counsel later come from a different post-doc rationale seeking deference to a determination or line drawing that was never actually made by the accountable, responsible decision makers. Is there authority one way or the other that addresses the situation, which may be this situation, where an agency says in the decision under review we interpret the statute to require X, gets to court, not such a good rationale. But it is by the time the case is in court, as clear as could be, that the agency approves that same position as a matter of its policy, acting within some range of discretion of the statute. Is there authority to address whether the court can or should say there is simply no point in a remand? I'm not aware of any. But in addition to that, I mean, if there was such a situation, I assume it would be a situation where I'm not aware of any. But even if that could happen, at a minimum, you would need the responsible agency policymaker, decision maker, having done something on the record perhaps and some subsequent action maybe. Here all we have is exactly what they're not allowed to do under Chenery, which is post-hoc rationales of counsel and litigation. The agency decision maker said they were going to the outer limits of their authority to effectuate this congressional guarantee as best they could. If they want to come back on that and say, no, we're not going to, we're just going to leave it alone because we'd rather not, then the responsible, accountable agency decision maker has to one, take responsibility for it, and two, give a reasoned justification on the record. So here's your argument. There's no doubt in my mind that the rule of finality and the 180 days would have been a reasonable exercise of their discretion under 154B3 to correct their own mistake. And if they had tied it unquestionably to the 180-day period for civil litigation in the district court when someone's dissatisfied, you would never be standing here in front of us today, never. So your whole position is that while that would be reasonable and while it may be an inference that could be drawn from the federal register, it isn't expressed. And worse yet, Your Honor, what we have in this record is some particular agent within the agency who said they were denying our petition on a not-so-great reason. They're saying that they don't even have the discretion to go beyond 180 days, which clearly they would under the statute, so that's wrong. But they've already made a considered reasoned determination not to go beyond 180 days, which is quite defensible. So the problem you have is, even if I were to agree, you know what? In your reconsideration motion second and third for each of the patents here, PTO, go back and rethink this. I mean, I'm not going to order them to give you the extension because it's within their discretion to choose whether to or not. All I would say is the reason you chose not to, at least that you gave in writing, isn't good enough. Take another look. That still opens the door to them choosing not to on the quite rational and reasonable and ultimately not reversible reason that 180 days is the period for civil litigation, and we think that ought to be the outside limit of what we choose to do, even if we have the option to do more. You get nowhere under those circumstances. And that's all you've got. The reason we don't think remand would be futile is the following. First, the policymaking decision of record is to go to the outer limits of their legal authority. Second, if the responsible people now take a fresh look at it. I'm sorry. That's not quite right. They did not say whatever the outer limits are, we will go to them. No. What they said was that the outer limits were 180 days, and we won't go beyond that. Right. They said they were going to the outer limits of their authority. So you're right to the extent that there's a decision. I mean, there was a decision, though. They could have just stopped at 80 days. But it's not like an affirmative statement of the sort that occurs in every personal jurisdiction due process case where the state writes a long-arm statute that says, whatever we can do, we will do. I understand. But they did decide to make an extraordinary circumstances determination and to go to what they viewed as. The next thing is, at this point in time, there is no such – as both administratively and Congress have both recognized that this old 180-day rule doesn't work. At the agency now, you can get, in the same regulation, the 60-day period is extendable as of right by five months to seven months. And Congress, in the same statute as amended, has chosen the 180 days no longer runs from the issuance of the patent. It now runs from whenever the PTO wraps things up. But that's all ex post. You'd still have to go back and prove that them adopting the 180 days was de facto irrational or arbitrary and capricious. I don't see how you would have any chance of doing that. I mean, I just don't see that this is anything but a colossal waste of time if we remand it. Well, the reason we don't agree is what you would be – what we're asking courts to hold is that the agency acted based on a misperception of its legal authority and therefore now needs to reconsider in light of a correct understanding of its legal authority. So – A correct understanding of its legal authority as it existed at the time that it enacted the interim procedures. But my point – yes. But my point – agreed. But my point – Is there any reason to think that they could – if they understood their legal authority, they would have adopted different interim procedures? Well, the question if they reconsidered, right, is what would they do now? And they'd have a hard time now arguing that there's some important 180-day rule. Well, it's not what they would do now. It's whether or not the interim procedure as adopted was reasonable, which doesn't say what your decision says. The interim procedure, nowhere in it says we're going to go to 180 days because we have no authority to go further. The interim procedure says we choose 180 days. It's coextensive with the civil litigation period. Well, two things. First, in terms of what the standard would be on remand, if the agency had not made an error of law, the standard of review in court, right, is reasonableness. If you remand for them, though, they aren't reviewing their prior decision for arbitrary capriciousness. They're making a new decision with a correct understanding of the law. Now, that would be reviewed for reasonableness. But I don't think it would be the case that an agency decision-maker with a correct understanding of the law would be limited to saying, is what we did before, if we understood the law correctly, arbitrary capriciousness, question me, what are we going to do? And it's important for Chenery purposes because the point of Chenery as a doctrine of agency accountability is that agency decision-makers can't just say, sorry, I can't do it, and therefore dodge responsibility. They have to correctly understand the scope of their legal authority, and they have to actually, on the record, stand behind a decision to not grant relief to a factually congressional guarantee. I say they correctly understand the scope of their legal authority in the first decision on appeal here, not the two subsequent reconsideration decisions, because the first decision on appeal, which expressly cites Wyeth and the rule of finality, is unequivocally reasonable. I would not ever consider reversing this case on that first decision. What came after that, though, was the interim procedure. Right, and nothing in the interim procedure reflects the error that you're complaining about, only the subsequent reconsideration. No, it's no coincidence that the final agency action does not make and say that there's no extraordinary circumstance here because you could have done it sooner. They couldn't have done it. The reason they had to drop that after the interim procedure is that the interim procedure was inconsistent with that, because the whole point of the interim procedure was to use extraordinary circumstances authority to grant relief to people for whom the two-month period, some people from the two-month period had already expired. So if they had stuck with their original, if the final agency action was the same as the initial, then we would have had a very strong argument that they were acting arbitrarily and capriciously because what they were saying here was contrary to what they'd said in the federal register in the interim procedure about whether or not there was an extraordinary circumstance that could get you past the normal two-month period. Okay, I think we better hear from closing counsel. Is it Russilla? Yes. Okay, Mr. Russilla. Mr. Joseph, we're short about all time. May it please the Court. Daiichi has focused much of its energy on the interim procedure issued by the USPTO after this Court's decision in the Wyeth appeal, but this case really boils down to the simple issue. Daiichi failed to timely challenge the patent term adjustment determinations for its 014 and 205 patents under both the two-month deadline established by the USPTO and its patent term adjustment regulations and the 180-day deadline for judicial challenges established by the PTA statute. And when Daiichi belatedly came back to the USPTO, it could not demonstrate that its failure to file a timely patent term adjustment challenge was due to an extraordinary situation that would justify waiving or suspending the USPTO's two-month deadline under 37 CFR 705D. Can you address directly Mr. Joseph's argument, as I understand it, that the particular, say, September 28, 2010 decision rests on an express assertion that the PTO thinks it doesn't have authority to go beyond the 180 days. That's wrong as a matter of law. Choosing to do that, to follow that same substantive principle as a policy matter is a different thing, and that's not a judgment the PTO has made, and that it is entitled under the normal six-year APA-related statute of limitations to make that challenge and force the PTO to squarely recognize the choice that it has to make and to make it. Well, I think from the outset, I think that his reading of the final agency action is not entirely correct. I think what the agency did, if you look at the three agency decisions for that patent, the agency did set forth in its first decision the reasons why it believed that when a patentee chose to forego filing a request for reconsideration under the two-month deadline provided under 705D and later came back and said, oh, we just didn't realize we had a cause of action until the Wyeth decision came out, that that was not going to be an extraordinary circumstance. That would justify waiving the two-month deadline under 705D. Then you have to realize at the same time there is this overlapping ability to come back to the office under 154B4 under the PTA statute that allowed patentees to go to court and challenge a PTA determination within 180 days. Could they do that had they not first gone to the PTO and sought a petition? Yes. They could? They could have. In fact, in the Novartis case, the 155 patent in that case, in the Novartis case decided here, that the patentee did not file a 705D petition. Instead, they went directly to the court. And the language of 154B4A does not require any administrative exhaustion. Well, 154B4 says, an applicant dissatisfied with a determination made by the director under Paragraph 3 shall have a remedy by civil action within 180 days. Is Paragraph 3 the... What is Paragraph 3? Is that... So the PTA determination, the PTA total, the amount that's on the face of the patent, is a determination of PTA under Section 3. Is Section 3 the procedures for patent term adjustment determination? Is that the Section 3 that's being referred to? That's correct. So if that's the Section 3, it says the director shall prescribe regulations establishing procedures for the application for and the determination of patent term adjustment. So the only thing you have a right, it seems like under 4, to appeal directly to the district court is a determination you don't like that's already been made under 3, right? Am I wrong? What am I reading wrong? Well, the Novartis case decides that... Okay, the Novartis case says. What I want to know, is that what the statute says? No, what the statute says is that if you are under Paragraph 3, Paragraph 3 talks about all of the patent term adjustment determinations made by the office. No, not made by the office. Made by the director. The director shall make a determination of the period, right? Director shall reinstate all or a part. That's not talking about... That's talking about a patent term determination made. You can't... I mean, you can't appeal unless you first have a refusal by the office, can you? You can't... If you've never asked the office for an extension of your patent term, how can you go to the district court? Because the determination of the PTA on the face of the patent was one of the determinations under Paragraph 3. Now, we do provide... The statute did say that we have to provide an applicant one opportunity to request reconsideration. And we did do that. That's what the statute... That's what the regulations under 1705... They don't have to do a 1705 request for a waiver of the two-month period in order to go to the district court. But they had to have first requested that the PTO extend and be denied that request. No. If the patentee went to court within the 180 days and challenged the patent term adjustment determination... But that had to be a determination already made. Yes. By the patent office, right? Who else makes it? It had to be made by the patent office. That's correct. Upon issuance of the patent, and it's on the face of the patent, the PTA... The total amount of PTA adjustment granted to the patent is on the face of the patent. And they had 180 days from the issuance of that patent to challenge that PTA determination. That's one pathway. The other pathway that they could have come back to the patent office within the two months to challenge administratively... These determinations are automatically made at allowance, right? At issuance. At issuance. First at allowance and then adjusted at issuance because there's a period you need to take into account. Exactly. A lot of the PTA is determined at allowance, but then there's a little more that's added in between allowance and issuance, and then the final amount is put on the face of the patent. And I think we started down this road by your saying something about how in Novartis, and I guess my question is in other cases too, when somebody went to court within 180 days but didn't do the reconsideration, the regulation-provided reconsideration process, that you have not objected, waived, whatever? That's correct. We have not objected. We have taken those patents back for reconsideration. Just in wise circumstances or uniformly, do you ever insist on essentially exhaustion of the regulatory reconsideration process? Under the statute as it's newly written, there is an exhaustion requirement, but under this previous statute, there was not that exhaustion requirement. And so I think we did take back those patents when they were filed timely in district court within 180 days if they missed the two-month window at the Patent Office. And were you doing that even for non-YF errors, or did that not come up? I don't know if that came up. Back to what I think was just Joanna's first question to you. If we were to interpret the decision of the PTO as saying we can't consider your petition because it would cause us to go beyond 180 days, which we believe is the outer limit on our authority for considering extraordinary type circumstances. If we were to interpret the agency's decision in this case as saying that, and if we were to think that we're in fact not consistent with the statute, if we were to come to the conclusion the agency is not limited to 180 days, what then? Is that a different case now that's here, or is it the same case? And if our conclusion is the agency's spoken rationale for rejection in this case is legally flawed, what do we do? I think it's still the same case here because the agency not only rejected the petition on that reasoning, it also said under 183 he could not show that there were not extraordinary situation merely failing to file your request for reconsideration within the two months and then pointing to a later court case. That did not create an extraordinary situation. And that is the basis of their request for waiver of the two-month deadline. And so it always comes back down to that issue. And so the Patent Office's decision on that issue would still stand, even if you disagree with the 180 days. And the decision on that issue, namely the choice about how to exercise the regulatory 183 authority, that doesn't appear in this 3121-22 document but in some predecessor? It's in the two predecessor. Predecessor, not the reconsideration. It's in the first reconsideration but not the second reconsideration explicitly. But I think it's all included in there, generally in the denial of the 183 petition. Again, I would point to in the second petition decision from October 12th, 2010, which starts at JA 3375, on page the fourth page of that decision, 3378 is the page I'm looking at right now. And this is the second time they raised this issue with us and the second time the agency rejected it. In the middle of that page, we state again that the facts of the records do not support an extraordinary situation. There's nothing extraordinary about a registered practitioner who has faced the deadline and has limited time to submit a paper to the office to preserve his rights. Moreover, there's nothing extraordinary about a practitioner who failed to act in concert with published regulations. And then we underline, this office concludes that this situation does not constitute an extraordinary situation such that justice requires the waiver of the rule. And this one is actually about two weeks after the earlier one. No, it's actually months. Oh, but this one is months after the interim procedure. Right. But Mr. Josepher said that these documents all preceded the interim procedure. No. Oh, it was in between. This was in between. This decision addresses actually both issues. This decision, after that underline... This decision is dated October 12th, 2010. No? That's... 23375? That's correct. And the interim procedure... February 1st, 2010. Well, so is it October 12th, 2010 after February 1st, 2010? Yes. And so this... I'm sorry, maybe I misunderstood your question. So this does address both issues. They argued the interim procedure issue as an alternative argument beyond the first 183 argument that they provided to the office. And so what the office decided... And at the end of this decision, the office says, in view thereof, it's concluded that the initial determination of the patent term adjustment of 357 days will not be reconsidered. So I would submit that this is the agency's final determination. I guess what I was referring to is I was looking at the 3121. That's the September 28th, 2010 decision on the 205. And that is at least, as to the 205, the document that has the sentence the PTO believes that the 108-day period represents the outer limit. Two weeks later, in the one... what, the 014... That's right. ...the agency is saying, we don't think we should do this under 183, which maybe put together suggests that one should not overread the outer limits sentence of the one two weeks before or what. Except, Judge Taranto, that the first one for the 205, which is dated April 14th of 2010, on 3814, it also post-dates the interim procedures, which Mr. Joseph Roll explains to me when he stands back up why that is or isn't relevant, since he confused me with his dating. But 3815, it has the second rationale, which is the finality line, on 3815 for the 205. And that decision is two weeks after the decision in the 014 patent, which presented the same argument. So it followed quickly on the heels... So why did the agency allow itself to issue these stupid decisions where it said it doesn't have the authority to go behind 180 days, and why didn't they just keep parroting the same thing they had said before? Isn't cutting and pasting easier than coming up with new opinions? Well, I think that that probably would be easier, but I also think that it's not inconsistent, because I think what the agency was saying was that, look, under this set of facts, under the theory, the excuses that you were providing to us, we are not going to find an extraordinary situation. The only other way you could have come back to us is if you filed a timely judicial challenge within 180 days. You didn't do that. So we're going to... Because you're beyond that 180-day mark... The decision in 3121 and 3122, where does it say that? Where does it say anything other than we believe we're limited to 180 days? Go away. What sentence in this opinion should I read and interpret the way in which you're suggesting? So in that opinion, the agency does cite the 705D. It does in the first paragraph. It cites the 705D on... It says the petition filed under this provision. On 3382, and it also acknowledges that there are... We're 3122? Are you... 3382, sorry. I'm sorry. I'm on 3121 and 3122. Oh, you're on the 205, not the 014 patents. Yes. Okay, my apologies. Where in this decision does it say anything? It seems to me the only rationale given in this decision is the 180 days is beyond our authority. In the 205, you were correct. There is no... It does not cite back to those things. But again, I would submit that this decision followed quickly on the heels of the broader, more in-depth decision for the 014 patent, which presented the same exact arguments. And the prior decision for this very patent, 205, did have the detail that you're referring to, right? On 3814? So the initial dismissal on the 3814 of the 205 had this on 3815. It did not go into the same detail as for the 014 patent. So the initial decision for the 205 did not provide the same fulsome explanation as in the 014. Look up fulsome when you get back. But they did... Again, I think if you look at the record and you look at the arguments that the agency made, you can reasonably discern the path that the agency was taking. And I don't think that that 180-day... That statement that the 180-day limit is the limit in this case should be found to be contrary to the law because under the facts of this case, the only two ways that the patent office had determined that they could come back was under this 183 extraordinary situation which the office found that each decision was not going to justify that. So the only other way they could have come back was to file a timely case in court within the 180 days. They failed to do so. So therefore, under the facts of this case, because they were beyond that 180-day mark, the patent office was not going to grant their petition. I have one more question, if you don't mind. Is there any difference, then, between 205 and 014? Since in the 014 set of decisions, the patent office's rationale was much more fully fleshed out in a way that could be affirmed. And in the 205, the patent office's decisions were more skeletal in nature and really seemed to convey the idea that the rationale behind their decision was a lack of authority. I don't believe so because I think when you look at the record as a whole, you can reasonably discern the agency's rationale behind why it was... And if we didn't discern that rationale the way that you've proposed it, suppose that I did reach the conclusion that the only stated rationale is an improper one because it doesn't suggest they wouldn't do it. It suggests merely that they thought they couldn't. What would be the recourse, then? I would vacate and remand... And then I think the agency would... The same reasoning that it provided for the 014 patent and deny the petition. Thank you. Let's let Mr. Joseph have his three minutes of rebuttal. Thank you, Your Honor. Just three relatively quick points. First, on the timeline, I apologize for the one mistake on the timeline. There was a mistake. The two important, I mean, legally important things we think about timelines are these. First, you were talking before about the final for the 205 patent relying exclusively on the outer limits of the authority. It was after the final action on the 205 that the final action for the 014 came out. The 014 final action was March 17, 2011. But none of the afters were predicated on the timing of the interim guidelines, what you had said before. They're predicated on each other. I did make a misstatement earlier. I'm making two better points right now, I hope. One is that recognizing that, one recognizes that the 205 final relies solely on the outer limits of their authority. After then, we have the final on the 014, and it's materially identical to the final for the 205. It also has the outer limits portion, and that's from March of 17, 2011. So what we see in terms of timing is you have these initial determinations that had other reasoning. Now, what happens after an initial determination? We file something saying, we request reconsideration of the initial determination because we think it's wrong. Well, when they come back in what the final for each of them, by dropping the reasoning that we had argued was wrong and using different reasoning, the logical inference is not that they still want to use the previous discarded reasoning that we had argued was wrong, but they're now using this reasoning. As a matter of just judicial review practice, don't we review the original decision as well as the reconsideration decision? I mean, the reconsideration decision did not disavow the logic of the original decision. Lots of district court judges use a shorthand in their reconsideration decisions all the time. They seldom are as lengthy as the denials of Jamal, for example, or something like that. So is it suddenly the case that the only thing on review to us and the only logic I should look to is what was proffered in the reconsideration? If this was a district court, I would almost certainly say no, because the district court practice, right, is if you write it all in reconsideration, it's pretty briefly. With PTO, when they have the interim actions and then they have final actions that are just fundamentally rewritten and contain different reasoning, I think that does have significance. But there's no interim action here. There was a dismissal from the petition. That's not an interim action. You sought a second bite at the apple and a third bite at the apple, but the first dismissal was the dismissal and the final action, right? No, the PTO labeled the earlier ones before we get to the final in each one. I'm using PTO's nomenclature here. The earlier ones, they call interim. And it's not a cumulative right. What do you mean they call them interim? Where do they call them interim? I'm on page 3375. This is the dismissal for the application of patent term adjustment. It doesn't say anything about here's an interim decision and we're going to issue another one later. Well, the difference is what they don't say is this is a final, which you do get in the final agency action. But there's no obligation. Wait, this is the end of your petition unless you file a reconsideration motion. There is nothing subsequent that they should, would, or ever would issue after this. Our understanding, at least, is that until they issue one that says final on it, we actually can't go to court. And that you go back and you ask them to issue a final and you think the final state of the following because they were wrong the first time. That, at least, is our understanding of the agency practice. But the other very important point, though, is that it's not random that the earlier decision, the non-final decisions, had one rationale and the final one had a different because along the way... Look, on 3379, Mr. Josepher, you said it didn't say final, but actually what the PTO says, in view thereof, it is concluded the initial determination of patent term adjustment will not be reconsidered, period. That seems to give you the finality that you seek, doesn't it? It certainly, I mean, obviously... It surely doesn't suggest it's an interim decision. It will not be reconsidered. No, it's, I know it sounds absolute, but the PTO practice, though, is when you get this, when you get one that says final, that's where you take the court and we went through to get finals on each of them. But the other thing that did happen along the way, I don't think it's just random that they abandoned the earlier rationale and ended up with a new one because the earlier rationale was incompatible with the interim procedure. I mean, the earlier rationale that it's not extraordinary because you could have fought within two months and didn't is incompatible with the interim procedure which says, which invoked the extraordinary circumstances authority to give relief to four months' worth of patents as to which the two-month period had run. I was also going to point out, there's been, and the second point was going to be quickly, that there has been discussion of, you know, is filing a request for reconsideration in the PTO necessary as a matter of exhaustion of remedies to pursue your judicial relief? I mean, the two main things I can point you to, and also remember, the question here, right, goes to the agency's reasoning in the interim procedure. So even if it had been wrong about this in the interim procedure, I mean, it still shows that what the agency was doing in the interim procedure is not the same as the post-hoc rationalization of counsel now. But ahead of the interim procedure in 2003, and this is a PTO determination that's cited in the brief, the PTO determined that it is a fundamental principle of administrative law that, absence of unusual circumstances, the claimant must first exhaust his or her administrative remedies before resort is handed to the court, and that the failure to seek administrative relief within the prescribed time period forecloses the right to judicial relief. The interim procedure then specifically said that it adopted, consistent with this, an optional procedure, and that if anyone wanted to go to court, they had to comply with the requirements of the reconsideration procedure, quote, in a timely manner. So whether or not they've since changed their mind or whether or not they've even been right about that all those years, the point is that what they were doing in the interim procedure was not, was in fact giving relief to four months' worth of people who, they said, would not have otherwise been entitled to it. Very final point, I would be remiss if I didn't mention before I sat down this court's decision cited in the briefs of Helgoff and Karas against Dickinson case, where this court held that the agency had abused its discretion, didn't even remand, just held it abused its discretion by not using its extraordinary circumstances authority to excuse compliance with the two-month deadline. And the reasoning they gave there was that the agency had erred as a matter of law and was partly responsible for creating the situation. Obviously, it's not directly on point, but the reasoning is similar and it suggests and certainly shows that the agency's discretion is not unlimited and that the courts do have an important role in ensuring that when the PTO acts, it does so consistently with the law. Okay. Thanks, both counsels. The case is taken under submission.